IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:07-CV-01702 LTB

**ISAIAH KELLEY, JR.,** an individual,

    Plaintiffs,

**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION,** a Delaware Corporation, **NEW YORK LIFE INSURANCE COMPANY,** a New York corporation, and **PATRICIA DOSS,** an individual,

    Defendants.

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, Isaiah Kelley, Jr. ("Kelley"), through his undersigned counsel, submits his complaint against New York Life Insurance and Annuity Corporation, a Delaware corporation ("NYLIAC"), New York Life Insurance Company ("NYLIC") and Patricia Doss ("Doss"). Plaintiff states the following:

**NATURE OF THE CLAIMS**

1. This suit arises out of certain actions related to a contractual relationship between Kelley on the one hand, and both NYLIC and NYLIAC on the other hand, under a written contract dated December 9, 1997 (the "Contract"). The Contract references both corporate defendants and defines them, collectively, as "New York Life." Accordingly, NYLIAC and NYLIC are sometimes referred to hereafter, collectively, as "NYL." Pursuant to the Contract, Kelley served as an agent for NYL soliciting and taking applications from customers for individual

life insurance policies, individual annuity policies, individual health insurance policies, group insurance policies, employee protection insurance plans and group annuity policies.

2. This suit is brought by Kelley under the theory of breach of contract, pursuant to Colorado law, against NYL to seek redress for terminating Kelley based upon unfounded charges of improprieties in connection with the completion of insurance applications, causing Kelley to lose substantial revenues.

3. In addition, this action is brought under 42 U.S.C. § 1981, as amended, against NYL and Doss for discrimination on the basis of race in the making, enforcement and/or performance of a contract. Kelley alleges that NYL's termination of the Contract was part of a continuing pattern of racial harassment and disparate treatment motivated by race or ethnicity.

4. As amended, this action also states claims against Doss for slander per se and slander per quod, against NYL for breach of fiduciary duty and civil theft, and for civil conspiracy against all Defendants.

## THE PARTIES

5. Kelley is an African-American male who was an agent for NYL from December 9, 1997, until May 18, 2004, the date on which NYL terminated the Contract. Defendant resides at 9006 E. Floyd Place, Denver, Colorado 80231.

6. Defendant NYLIAC is a Delaware corporation, authorized to do business in Colorado, having its principal place of business in Colorado at 3200 S. Cherry Street, Suite 700, Denver, Colorado 80209. At all relevant times, NYLIAC employed Doss and acted in concert with her and NYLIC in connection with the acts and omissions complained of herein. NYLIAC is liable to Kelley under the doctrine of respondeat superior.

7. Defendant NYLIC is a New York corporation, authorized to do business in Colorado, having its principal place of business in Colorado at 3200 S. Cherry Street, Suite 700, Denver, Colorado 80209. At all relevant times, NYLIC employed Doss and acted in concert with her and NYLIAC in connection with the acts and omissions complained of herein. NYLIC is liable to Kelley under the doctrine of *respondeat superior.*

8. Defendant Doss is an individual residing at an unknown address in the Denver metropolitan area, but having an office at NYL's Denver Office at 3200 S. Cherry Street, Suite 700, Denver, Colorado 80209. At all relevant times, Doss was an employee of both NYLIAC and NYLIC and acted in concert with NYL in connection with the acts and omissions complained of herein.

## JURISDICTION AND VENUE

9. This Court currently exercises jurisdiction of this action as a result of the Defendants having filed a Notice of Removal of this action from the Denver District Court (the "State Court") on August 10, 2007, pursuant to 28 U.S.C. § 1446.

## GENERAL ALLEGATIONS

10. On or about December 9, 1997, Kelley became an agent with NYL pursuant to a certain Agent's Contract dated such date (the "Contract") and so served until May 18, 2004, when NYL terminated him by letter of such date (the "Termination Letter"). Specifically, the Termination Letter stated that the Contract itself was terminated effective June 18, 2004, but terminated Kelley's authority to solicit business on behalf of NYL effective immediately. The Contract references and specifically incorporates an Agent/Registered Representatives Handbook

(the "Handbook"), which sets forth certain specific requirements and benefits of NYL agents such as Kelley.

11.     During the term of the Contract, Kelley engaged in the business of, among other things, acting as a soliciting agent of NYL, as alleged above. Kelley's performance historically under the Contract was stellar, as evidenced by the fact that for four consecutive years, Kelley received several awards of distinction.

12.     In approximately 2000, NYL reassigned Defendant Doss from the Houston NYL office to the Denver NYL office as its Managing Partner for the Denver office, where Kelley worked. Almost immediately thereafter, Doss and NYL (at Doss' instance) began to engage in a series of acts apparently designed to harass Kelley and such acts evince a desire on the part of Doss from the very beginning to develop a pretext for terminating the Contract and Kelley, as well as a continuing pattern of harassment and disparate treatment of Kelley, including the termination itself. Such conduct includes Doss' and NYL's making of several unfounded charges of improprieties in connection with the completion of insurance applications, as well as initiating an unfounded charge of sexual harassment against Kelley. During the relevant period, and during Kelley's then-pending campaign for public office in 2003, Doss also threatened to disseminate to the press alleged, but untrue, assertions of improper sexual misconduct on the part of Kelley.

13.     During the years prior to Doss' assignment to the Denver NYL office, Kelley had performed admirably, having had no prior disciplinary actions, and having been selected to the Executive Counsel program consistently over four consecutive years.

14. The purported basis for the termination of the Contract as set forth in the Termination Letter was NYL's conclusion that Kelley had "[s]ubmitted a life insurance application that contained two signatures of the proposed insured which were not genuine and that he had signed as a witness to both of those signatures." These signatures also had been labeled as "fraudulent" by NYL's document examiner.

15. However, pursuant to the terms of the Contract, NYL may terminate for Kelley's submission of a document ". . . on which any required signature is not a genuine <u>or duly authorized</u> signature." In reality, the questioned signature was made by the applicant's wife. The signatures were in fact authorized by the applicant, as he and his wife often signed documents for each other. Thus, because the signatures were in fact authorized, NYL had no legitimate basis at all to terminate the Contract. Further, NYL terminated the contract on the alleged basis without ever so much as contacting the proposed insured to determine if the signatures were authorized— if not genuine, a question that the Termination Letter fails even to address.

16. Following the termination, NYL twice filed complaints against Kelley with the Colorado Insurance Commission, which charges required Kelley to obtain legal counsel to address those charges. The Insurance Commission has exonerated Kelley or has taken no further action following his responses to NYL's charges.

17. Further, NYL has breached, and continues to breach, the Contract in several respects. In addition to the facts noted above, despite written demand therefore, NYL has failed and refused for three years, and continues to refuse, to calculate and pay to Kelley all sums due under the Contract for commissions, renewal fees and service fees due prior to, and coming due

subsequent to, the termination, such rights arising from insurance contracts that Kelley procured during the term of the Contract.

    **18.**    Doss' apparent contempt for Kelley has continued since the termination, as evidenced by the fact that, during Kelley's recent (approximately May 2007) run for a Denver City Council position, Doss made derogatory comments to other persons regarding Kelley, stating that he is unfit for public office because he "beats women." Upon information, Doss also contacted a local retailer (King Sooper's at 10th and Downing Streets in Denver) and made statements intended to preclude Kelley from placing campaign materials on its premises. Also, since the termination, NYL has written Kelley one or more letters falsely accusing him of unlawfully soliciting NYL customers, contrary to the Contract.

    19.    As a direct result of Doss' and NYL's callous acts and omissions, Kelley and his family have suffered loss of income. Further, Kelley himself has suffered exacerbation of his medical condition as a result of NYL's acts and omissions, which medical condition was within the knowledge of Defendants prior to the acts complained of herein. And, Kelley has incurred, and will continue to incur, significant attorneys' fees in dealing with this matter until it is fully and satisfactorily resolved.

    20.    As a result of the acts described above, Kelley has incurred direct and consequential monetary damages in the form of lost revenues due to NYL's continuing breach of the Contract, its unlawful discrimination against Kelley and the other wrongs alleged herein.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract, against NYL)**

21. Kelley incorporates the allegations of paragraphs 1 through 20.

22. NYL has breached the Contract in several respects. First, the Termination Letter is based on unfounded claims of improprieties completely unsupported by the Contract or the surrounding factual circumstances. The Termination Letter purports to base the termination on the conclusion that Kelley submitted an insurance application with signatures that were not genuine, or fraudulent. However, pursuant to the terms of the Contract, NYL may terminate an agent for submission of a document "on which any required signature is not a genuine or duly authorized signature." NYL's failure to even consider whether the signatures were authorized—which they were—and its termination of the Contract contrary to its terms and on an insufficient factual basis constitute breach of the Contract.

23. Second, NYL's failure and refusal to calculate and pay to Kelley all sums due under the Contract for the previous three years, and through the date hereof, for commissions, renewal fees and service fees due prior to, and coming due subsequent to, the termination, constitutes another breach of the Contract, which breach is continuing in that, upon information and belief, renewal fees and commissions continue to accrue under the Contract, and NYL continues to retain those funds for its own benefit.

24. Kelley has suffered economic harm as a result of these breaches of the Contract. Therefore, NYL is liable to Kelley for actual damages, pre-judgment interest on actual damages, post-judgment interest, costs and attorneys fees, and such other and further relief as this Court deems just and proper

## SECOND CLAIM FOR RELIEF
### (Race Discrimination, Discrimination in the Making, Performance and/or Enforcement of a Contract, in Violation of 42 U.S.C. § 1981, as amended, against NYL and Doss)

25. Kelley incorporates the allegations of paragraphs 1-24.

26. NYL and Doss have treated Kelley disparately from the other similarly situated agents under the Contract in several respects.

27. First, the purported basis for the termination of Kelley's Contract was without any legitimate justification in the first instance and was, therefore, a pre-meditated concoction and pretext to explain the removal of Kelley from further work and revenues under the Contract.

28. Upon information and belief, it is typical for NYL agents and those representing other insurance companies to accept and verify signatures purportedly made by an applicant, but which were in reality provided by another person on the behalf, and with the authority, of the applicant.

29. Second, following the Termination Letter, NYL continued to ignore the question of whether the signatures were duly *authorized*. Instead, NYL chose to incur the expense of procuring an expert handwriting analyst to ascertain whether the signatures were *genuine*. This fact further illustrates NYL's and Doss' desire to find a pretext to terminate the Contract.

30. NYL has violated Kelley's civil rights by discriminating against him in the making, performance and/or performance of a contract, contrary to 42 U.S.C. § 1981, as amended. Doss and NYL singled Kelley out and undertook, through considerable effort over a substantial period of time to discover (and, failing that, to create) a legitimate basis to terminate him. The sole reason for that effort was that Doss did not like Kelley because of his race or ethnicity, contrary to 42 U.S.C. § 1981, as amended.

31. NYL's management has a history of discriminating against minorities in employment in general and against persons of African and African-American descent in particular. Most particularly, Doss herself has a history of problems in dealing with persons of African-American descent.

32. These acts of disparate treatment were intentional acts, and Kelley's race was a motivating factor in NYL's acts. Further, the conduct of NYL was motivated by evil intent or involved reckless or callous indifference to the rights of Kelley.

33. Accordingly, both the continuing pattern of discriminatory conduct and the termination itself constitute intentional discrimination that is actionable under 42 U.S.C. § 1981, as amended. Therefore, NYL is liable to Kelley under 42 U.S.C. § 1981, as amended, for direct and consequential damages.

### THIRD CLAIM FOR RELIEF
### (Defamation--Slander Per Se—Against Doss)

34. Kelley incorporates the allegations of paragraphs 1 through 33.

35. During the course of Kelley's recent campaign for a Denver City Council position, Doss published an oral statement to other persons (including, but not limited to, Ms. Paula Saraceno and Mr. Mike Simmons) that Kelley was unfit for public office because he "beats women."

36. Doss' statement was false at the time it was made, and Doss made the statement knowing that it was false or with reckless disregard as to the truth or falsity of the statement.

37.  Doss' conduct constitutes libel *per* se under Colorado law, because (1) it imputes to Kelley the commission of a crime (namely physical assaults against women) and (2) it defamed Kelley in his desired public office.

38.  The publication of the statement caused damage to Kelley.

## FOURTH CLAIM FOR RELIEF
### (Defamation—Slander *Per* Quod—Against Doss)

39.  Kelley incorporates the allegations of paragraphs 1 through 38.

40.  Doss' publication of the oral statement described above constitutes slander *per quod* under Colorado law.

41.  The substance or gist of Doss' statement was false at the time it was made, and Doss made the statement knowing that it was false or with reckless disregard as to the truth or falsity of the statement.

42.  Doss' conduct constitutes libel *per quod* under Colorado law, because the statement was understood in a defamatory sense by one or more of those who listened to the statement.

43.  The publication of the statement caused special damage to Kelley.

## FIFTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty—Against NYL)

44.  Kelley incorporates the allegations of paragraphs 1 through 43.

45.  NYL acts in a fiduciary capacity to Kelley pursuant to the definition of "fiduciary" as set forth in C.R.S. § 15-1-103, which includes those acquiring such status through constructive trust. A "constructive trust" arises by operation of law in this matter, because NYL holds funds (in the form of residual commissions, renewals and other remunerations due under the Contract)

that rightfully belong to Kelley. With respect to payment of the monies, Kelley placed a special confidence in NYL, because NYL has the sole knowledge at any point in time necessary to determine the amount of commissions, renewals and other remunerations that are due and payable.

46. NYL, which is and was in a superior position to Kelley, retains these monies through actual or constructive fraud, by duress or by abuse of confidence, by commission of wrong, or by other form of unconscionable conduct, and/or by other questionable conduct, and NYL should not, in equity and good conscious, hold and enjoy the monies to the exclusion of Kelley.

47. As a fiduciary, NYL has a duty to (1) regularly and accurately determine the amounts of such monies due to Kelley under the Contract and (2) to pay the same to Kelley without inordinate delay, so long as any contract of insurance procured by Kelley remains in effect through renewal thereof or otherwise.

48. NYL has breached, and continues to breach its fiduciary duty to Kelley, as described above.

49. Kelley has incurred damages as a result of NYL's breach of its fiduciary duties to Kelley.

### SIXTH CLAIM FOR RELIEF
### (Civil Theft-Against NYL)

50. Kelley incorporates the allegations of paragraphs 1 through 49.

51. NYL knowingly obtained and currently exercises control over property belonging to Kelley (namely, commissions, renewals and other remunerations due Kelley) without Kelley's

authorization.

52. NYL exercised and continues to exercise control over such property either: (a) intending to deprive Kelley permanently of the use or benefit of the funds; or (b) knowingly using or concealing the funds in such manner as to deprive Kelley permanently of their use or benefit; or (c) using or concealing the funds intending that such use or concealment would deprive Kelley permanently of their use and benefit, all contrary to C.R.S. § 18-4-401.

53. Therefore, pursuant to C.R.S. § 18-4-405, Kelley is entitled to recover three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees.

**SEVENTH CLAIM FOR RELIEF**
**(Civil Conspiracy to Commit Theft and to Violate Civil Rights — Against all Defendants)**

54. Kelley incorporates herein by reference the allegations set forth in paragraphs 1 through 53.

55. Defendants knowingly and willfully conspired and agreed among themselves to perpetrate upon Kelley the violation of his civil rights and the theft and deprivation of monies rightfully belonging to Kelley.

56. Defendants demonstrated their agreement to perpetrate the foregoing unlawful scheme by virtue of having (1) terminated the Contract without cause and in bad faith, contrary to the Contract and the Handbook, (2) exercised control over monies rightfully belonging to Kelley, contrary to C.R.S. § 18-4-401 and in breach of NYL's fiduciary obligation, contrary to C.R.S. § 15-1-103.

57. As a proximate result of the unlawful acts perpetrated by the Defendants, Kelley

was subjected to severe emotional and physical distress, has sustained injury to his health, strength and activity, all of which injuries have caused, and continue to cause, Kelley extreme mental, physical and nervous pain and suffering.

58. Accordingly, Defendants are jointly and severally liable, and Kelley is entitled to the damages he suffered as the proximate result of the wrongful acts and omissions that Defendants conspired to take or omit to take.

**FOR THE ABOVE REASONS,** Kelley requests that the Court enter judgment in his favor and against Defendants NYL and Doss, jointly and severally, as appropriate, and award the following relief:

A. Actual and compensatory damages;

B. Injunctive and/or declaratory relief, as may be appropriate;

C. Pre-judgment and post-judgment interest at the highest lawful rate;

D. Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

E. Any such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED: February 8, 2008.

/S/Horace A. Lowe

_____
Horace A. Lowe
H.A. LOWE & ASSOCIATES LLC
2200 Market Street. Ste. 701
Denver, Colorado 80205
303-495-2040
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that on February 8, 2008, the foregoing **SECOND AMENDED COMPLAINT AND JURY DEMAND** was served on all parties and other interested persons by delivering a correct copy of the same via Electronic Filing, to be communicated to the following:

**Counsel for Defendants NYL and Doss**

Michael S. Beaver, Esq.
Holland and Hart LLP
8390 East Crescent Parkway, Suite 400
Greenwood Village, Colorado 80111

Gregory R. Clouser, Esq.
Holland and Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202

                                                          _____
                                                          /S/ Horace A. Lowe