IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01702-LTB-BNB

ISAIAH KELLEY, JR.,

    Plaintiff,

v.

NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, a Delaware corporation,
NEW YORK LIFE INSURANCE COMPANY, a New York corporation, and
PATRICIA DOSS, an individual,

    Defendants.
_____

# ORDER
_____

This matter is before me on a Motion for Summary Judgment filed by Defendants New York Life Insurance and Annuity Corporation and New York Life Insurance Company, (collectively "NYL"), and Patricia Doss ("Doss") [**Doc # 72**]. In addition, I address the Cross-Motion for Partial Summary Judgment filed by Plaintiff, Isaiah Kelley, Jr. [**Doc # 77**]. Oral arguments will not materially aid in the resolution of these motions. After due consideration, and for the reasons stated below, I GRANT Defendants' Motion for Summary Judgment, and I DENY Plaintiff's Cross-Motion for Partial Summary Judgment.

## I. BACKGROUND

Plaintiff served as an agent for NYL to solicit and take applications for various insurance policies pursuant to a contract dated December 18, 1997. Defendant Doss was employed by NYL. On May 18, 2004, Plaintiff was notified by NYL that his authority to solicit business on behalf of NYL was terminated upon receipt, and that his contract would be terminated 30 days

later. Subsequently, on May 18, 2007, Plaintiff filed this action.

On April 17, 2007, I dismissed with prejudice Plaintiff's claims for: race discrimination pursuant to 42 U.S.C. §1981; breach of fiduciary duty; civil theft; and conspiracy. Defendants now seek summary judgment in their favor on Plaintiff's remaining claim for breach of contract against NYL, and his claims of slander *per se* and slander *per quod* against Defendant Doss. In his cross-motion, Plaintiff seeks summary judgment in his favor on the breach of contract claim. it is undisputed that Colorado law applied to Plaintiff's remaining claims.

## II. SUMMARY JUDGMENT

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue

2

to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252.

### III. BREACH OF CONTRACT

In their motion, Defendants assert that they are entitled to summary judgment on Plaintiff's breach of contract claim against NYL, because the undisputed facts show that they properly followed the 30-day provision to terminate the contract at issue without cause, or, alternatively, they properly terminated the contract immediately for good cause. Plaintiff, in his cross motion for summary judgment, argues that he is entitled to summary judgment on his breach of contract claim because the undisputed facts show that the purported reason for termination was for cause, and the reason provided did not constitute good cause as set forth and required by the contract.

Plaintiff signed the contract at issue here in December 1997 to act as an agent to sell NYL insurance policies. In April 2003, Plaintiff submitted an application to NYL on behalf of James Todd. Thereafter, NYL questioned the authenticity of Mr. Todd's signature on the application. On February 11, 2004, Plaintiff sent a letter to NYL that stated that, with regard to

3

the application, "I observed Mr. Todd sign [the] application and non-med form."

NYL then sent Plaintiff a letter, dated May 18, 2004, informing Plaintiff that the contract "is hereby terminated, effective June 18, 2004." The letter indicated that "it was determined that you failed to meet your field underwriting responsibilities when you: [s]ubmitted a life insurance application that contained two signatures of the proposed insured which were not genuine and signed as a witness to both those signatures." The letter further provides that "your authority to solicit business on behalf of [NYL ...] is suspended, effective immediately."

The provisions of the contract related to termination state as follows:

10. Either the Agent or New York Life may, with or without cause, terminate this contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated.

11. In addition to the right of New York Life to terminate this contract as provided in Section 10 above, New York Life shall have the right, at its option, to terminate this contract immediately upon giving written notice of such termination to the Agent, for any one or more of the following causes:
. . .

(c) The submission to New York Life by the Agent of any document on which any required signature is not a genuine or duly authorized signature.

NYL asserts that by providing Plaintiff with thirty days of notice, it terminated the contract pursuant to ¶10, which provides that NYL "may, with or without cause, terminate this contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated." As such, NYL asserts that the termination was without cause pursuant to ¶10 of the contract, and denies that the termination was for cause as provided for in ¶11. In support of this argument, NYL asserts that the discussion in the letter about Plaintiff's submission of the application with two signatures which were not genuine was to provide

4

context, but was not necessary. NYL also argues that the letter's indication that "your authority to solicit business on behalf of [NYL ...] is suspended, effective immediately" did not serve to terminate the contract immediately, but rather only terminated Plaintiff's ability to solicit business. NYL maintains that the termination of Plaintiff's ability to solicit business did not terminate the contract – in that Plaintiff was still able to collect commissions on existing business – but only cancelled his ability to solicit or sell new business. I agree. Although the letter provided a "reason" for its decision, NYL clearly indicated that the contract was not terminated until 30 days after the date of the notice. The fact that Plaintiff was no longer authorized to solicit business on behalf of NYL upon receipt of the letter, did not in effect cancel the contract. This is illustrated by the fact that Plaintiff was paid the commissions due to him for the thirty day time period.

Plaintiff argues that if NYL terminated the contract pursuant to ¶10, such termination constituted a breach of the implied covenant of good faith and fair dealing. As such, because he claims to have had a "reasonable expectation" of "long-term employment," Plaintiff contends that NYL is responsible – under the doctrine of good faith and fair dealing – to pay him commissions through the time of his expected retirement.

First, I note that Plaintiff's theory of breach based on the implied covenant of good faith and fair dealing is raised here for the first time; it is not plead in Plaintiff's complaint and, more importantly, it is not set forth as a basis for Plaintiff's breach of contract claim in the parties' final pre-trial order [Doc # 81]. *See* Fed.R.Civ.P. 16(c); *Wilson v. Muckala,* 303 F.3d 1207, 1215 (10th Cir. 2002)("claims . . . not included in the pretrial order are waived").

Furthermore, I am not persuaded by Plaintiff's argument that the covenant of good faith

and fair dealing applies to a contract in with either party may terminate without cause. Although every contract contains an implied duty of good faith and fair dealing requiring the parties to the agreement to perform their contractual obligations in good faith and in a reasonable manner, the duty may be relied upon only when one party has discretionary authority to perform certain contract terms, including discretionary acts, in good faith. *O'Reilly v. Physicians Mut. Ins. Co.,* 992 P.2d 644, 646 (Colo. App. 1999)(*citing Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo.1995)). Thus, in Colorado, "a breach of the duty occurs when one party uses discretion conferred by the contract to act dishonestly or to act outside the scope of accepted commercial practices to deprive the other party of the benefit of the contract." *O'Reilly v. Physicians Mut. Ins., supra*, 992 P.2d at 646 (*citing Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359 (Colo. App. 1994)).

Plaintiff relies on *Hall v. Farmers Ins. Exchange,* 713 P.2d 1027 (Okl. 1985) for the proposition that an insurance company may not wrongfully terminate an agent's at-will contract. In that case, the Oklahoma Supreme Court held in a case that "[t]he implied covenant of good faith extends to a covenant not to wrongfully resort to the termination-at-will clause." *Id.* at 1030. However, that decision was subsequently limited because "there is no implied covenant of good faith and fair dealing that governs the employer's decision to terminate in an employment-at-will contract." *Stickney v. Kansas City Life Ins. Co.,* 25 P.3d 924, 928 (Okla. Civ. App. Div. 1, 2000)(*citing Hinson v. Cameron,* 742 P.2d 549, 554 (Okl. 1987)). Therefore, because the decision in *Hall v. Farmers Ins. Exchange,* "as it has evolved, provides that an agent who has been terminated may recover from his principal when the principal has deprived him of the fruits of his labor . . . the only measure of contract damages is the income from commissions earned, if

any remains unpaid, during [an insurance agent's] employment while performing his contract." *Stickney v. Kansas City Life Ins., supra,* 25 P.3d at 928. Here, Plaintiff was not deprived the fruits of his labor, as discussed above, but was paid the commissions due to him during the 30 day period after the date of the notice and prior to termination of the contract. *See generally O'Reilly v. Physicians Mut. Ins, supra,* 992 P.2d at 647 (overruling the trial court's finding in favor of terminated insurance agent on his contract-based claim of implied duty of good faith and fair dealing on the basis that the trial court erred in considering the agents extrinsic expectations in that the contract was unambiguous and, in addition, failed to identify a discretionary term in the agreement that the company allegedly abused).

Finally, to the extent that Plaintiff argues that he is entitled to summary judgment on his breach of contract claim, I first note that his Cross-Motion for Partial Summary Judgment was filed on November 11, 2008, after the dispositive motions deadline set by the scheduling order had passed on October 20, 2008. As such, his motion is untimely. Nonetheless, I reject Plaintiff's argument that he is entitled to summary judgment in his favor on his breach of contract claim for the same reasons, and based on the same rationale, as set forth above.

Therefore, under the undisputed facts, I conclude that NYL properly terminated the contract pursuant to ¶10 and, therefore, Plaintiff's claim for breach of contract cannot be supported and summary judgment should enter in favor of NYL as a matter of law. As I result, I do not reach NYL's alternative argument that even if the letter of termination was construed as being effective immediately, it was for good cause pursuant to ¶11(c) of the contract.

### IV. SLANDER

Defendant Doss also seeks summary judgment in her favor on Plaintiff's defamation claims against her for slander *per se* and slander *per quod*. The tort of defamation consists of two types of communication – libel and slander. Libel is usually a written communication while slander, as is relevant here, is generally an oral communication. *Keohane v. Stewart,* 882 P.2d 1293, 1298 FN5 (Colo. 1994), *cert. denied* 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 882 (1995).

Under Colorado law, statements which are slanderous *per se* must be "specifically directed at the person claiming injury and, on its face and without extrinsic proof, it is unmistakably recognized as injurious." *Lininger v. Knight,* 123 Colo. 213, 226 P.2d 809 (1951). "To determine whether a statement is [slanderous] *per se*, the court must examine the statement alone, without the aid of inducements, colloquialisms, innuendos, and explanatory circumstances." *Inter-State Detective Bureau, Inc. v. Denver Post, Inc.,* 29 Colo. App. 313, 317, 484 P.2d 131, 133 (1971). In contrast, a statement is slanderous *per quod* if it requires innuendo or extrinsic evidence to establish its defamatory nature. *Bernstein v. Dun & Bradstreet, Inc.,* 149 Colo. 150, 368 P.2d 780 (1962).

When viewed the light most favorable to Plaintiff, the facts in support of his claims of slander are as follows. In late April or early May 2007, Doss encountered Plaintiff – who was at the time campaigning for a seat on Denver City Council – at the entrance of a grocery store. When entering and leaving the store, Doss loudly stated to Plaintiff's campaign workers that they should not vote for Plaintiff because he "beats women," or words to that effect. The campaign workers were surprised and disgusted by the comments, which were angry and seemed to come out of the blue, but none of them believed the statements. Plaintiff testified that

8

although he could not identify how many people passing by heard the comments, no member of the public engaged him or seemed to avoid him. A store manager later asked Plaintiff about what occurred after an employee reported the incident to him.

A claim of slander, as a type of defamation, "is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage." *Keohane v. Stewart, supra*, 882 P.2d at 1297. At common law, the tort of defamation existed to redress and compensate individuals who suffered serious harm to their reputations due to the careless or malicious communications of others. *Id. (citing Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 11, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). However, "[w]eighed against the individual's right to be free from false and defamatory assertions . . . is society's interest in encouraging and fostering vigorous public debate." *Keohane v. Stewart, supra,* 882 P.2d at 1298.

Plaintiff does not contest that for the purpose of this controversy he was a public figure. *See Wilson v. Meyer,* 126 P.3d 276, 283 (Colo. App. 2005)(noting that the plaintiff was a public figure as a candidate for the hospital board); *see also Barnett v. Denver Publishing Co.*, 36 P.3d 145, 147 (Colo. App. 2001)(candidate for elective public office is a public figure). As such, a public figure must plead and prove that the defamatory statements were made with actual malice – that is, with knowledge that the statements were false, or with reckless disregard of whether they were true or false – and he or she must establish these elements by clear and convincing evidence, not merely by a preponderance of the evidence. *Wilson v. Meyer, supra*, 126 P.3d at 283. "This standard of proof applies equally at the summary judgment stage." *Id.*

Moreover, the Colorado Supreme Court has established a framework, consisting of two-inquiries, to ascertain whether a statement is constitutionally protected in these circumstances.

9

> The first inquiry is whether the statement is sufficiently factual to be susceptible of being proved true or false. The second inquiry is whether reasonable people would conclude that the assertion is one of fact. The factors relevant to the second inquiry are: (1) how the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed.

*Keohane v. Stewart, supra,* 882 P.2d at 1299 (citations and quotations omitted). Whether allegedly defamatory language is constitutionally privileged is a question of law. *Id.* at FN8.

Defendant Doss argues that her alleged statement that people should not vote for Plaintiff because he beats women is not, under the circumstances, legally sufficient to constitute a claim for slander because the statement is not sufficiently factual to be susceptible of being proved true or false. She asserts that the term "beat" is too vague and ambiguous in that it could connote a single push or slap of his spouse, a single push or slap of multiple women, or ongoing violent episodes involving one or multiple women. Therefore, she argues that the single phrase "beats women" is incapable of being proved true or false, and the statement is not actionable. I disagree. Although the statement that Plaintiff "beats women" is open to a range of interpretations, and encompasses a wide variety of actions, I conclude that it is a statement that could be proven generally true or false in that it consisted of a verifiable fact or factual implication about Plaintiff. The statements thus satisfy the first inquiry. *See Arrington v. Palmer,* 971 P.2d 669, 672 (Colo. App. 1998)(ruling that the assertion that the plaintiff had "physically threatened" people who disagree with him is sufficiently factual to be susceptible of being proved true or false).

However, Defendant Doss also asserts that, given the context of the statement, reasonable persons would not understand this statement to be an attempt to communicate actual facts. She

10

refers to the spontaneous nature of the comment – made to a candidate's campaign workers during a campaign event at the entrance of a grocery store – which leads to the logical inference that the people passing by who actually heard the statement would have understood that Doss was not attempting state actual facts about Plaintiff. Such a conclusion is supported by Plaintiff's own testimony that the people involved perceived Doss as being angry, bitter, and as having a chip on her shoulder. The store manager's comments regarding the incident – that she was "dizzy" or "ditsy" – also reveal that Doss was not perceived as being serious. Plaintiff further testified that none of his campaign workers believed what Doss said, based on the delivery and nature of Doss' statements, and that he himself interpreted the statements to be inconsequential. All of the evidence supports the conclusion that reasonable persons would not have understood the statements made by Doss to constitute assertions of fact; rather the context and circumstances surrounding the statements indicate they were mere expressions of Doss' personal animosity toward Plaintiff who, at the time, was seeking political office. *See e.g. Arrington v. Palmer, supra*, 971 P.2d at 673 (emphasizing that the political context of defamatory statement supported the determination that the statements cannot be reasonably interpreted as stating actual facts); *see also Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 687, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)(ruling a candidate for office cannot "'cry Foul!' when an opponent . . . attempts to demonstrate that he or she lacks 'sterling integrity'").

Therefore, I conclude that because the statements made by Doss could not reasonably be understood to be factual assertions when evaluated in the context in which they were given, I

conclude that the statements are not actionable as a matter of law. *Keohane v. Stewart, supra,* 882 P.2d at 1301 (concluding, when looking at the overall tone of the statement, that the Defendant was merely "venting her anger and frustration and is a signal that her words should not be taken literally or as reasoned accusations").

ACCORDINGLY, I ORDER as follows:

1) The Motion for Summary Judgment filed by Defendants New York Life Insurance and Annuity Corporation, New York Life Insurance Company, and Patricia Doss [**Doc # 72**], is GRANTED;

2) The Cross-Motion for Partial Summary Judgment filed by Plaintiff, Isaiah Kelley, Jr. [**Doc # 77**], is DENIED;

3) Plaintiff's Second Amended Complaint and Jury Demand [**Doc # 51**] is DISMISSED WITH PREJUDICE and the Clerk of the Court shall ENTER JUDGMENT in favor of Defendants; and

4) Defendants are AWARDED their costs.


Dated: December   30,  2008, in Denver, Colorado.

BY THE COURT:


   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE